IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JAMES WEBB                                                                                              PLAINTIFF

V.                                         NO.  2:06cv00192 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration[1]                                                                    DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff, James Webb, appeals from the Commissioner's final decision terminating his supplemental security income (SSI) benefits under Title XVI of the Social Security Act. For the reasons that follow, the Court **reverses** the Commissioner's decision and **remands** the case for further administrative proceedings.

I.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  The applicable regulations provide a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  Basically, those procedures require the ALJ to take into account whether a claimant is working, whether his physical or mental impairments are severe, whether the impairments meet or equal an impairment

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. He is therefore substituted for Jo Anne B. Barnhart pursuant to Fed.R.Civ.P. 25(d)(1).

listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work. *Id.* In evaluating a mental impairment, the ALJ must also rate the degree of a claimant's functional limitation in certain areas. 20 C.F.R. § 416.920a.

The claimant in a disability benefits case has a "continuing burden" to demonstrate that he is disabled, and "no inference is to be drawn from the fact that the individual has previously been granted benefits." *Nelson v. Sullivan*, 946 F.2d 1314, 1315 (8th Cir. 1991) (citing 42 U.S.C. § 1382c(a)(4)). However, if the Commissioner wishes to terminate benefits, the burden shifts to him to demonstrate that the claimant is no longer disabled because he has had a medical improvement and can now engage in substantial gainful activity. *Id.* Judicial review is limited to determining whether the Commissioner's decision to terminate benefits is supported by substantial evidence in the record as a whole, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. 42 U.S.C. §§ 405(g), 1382c(a)(4)(A), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining substantiality, the Court must consider both evidence that detracts from and evidence that supports the decision. *Muncy v. Apfel*, 247 F.3d 728, 730 (8th Cir. 2001).

II.

Plaintiff was born on November 9, 1959. (Tr. 22.) He is a high school graduate and apparently has not worked since the early 1990s, when he did construction and farm work. (Tr. 171, 238, 316, 318.) In the 1980s and early 1990s, he served at least two prison terms in the Arkansas Department of Correction (ADC). (Tr. 199, 218-19, 237-38, 319.) On

August 9, 1994, he was found disabled and entitled to SSI benefits due to paranoid schizophrenia, meeting the requirements of Listing 12.03. (Tr. 25-34.) *See* 20 C.F.R. §§ 416.920(d), 416.925; 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03(A)(1) & (3), (B)(1-4). In December 1999, the Social Security Administration (SSA) conducted a continuing disability review and determined that Plaintiff remained disabled under Listing 12.03 due to a "functional psychotic disorder." (Tr. 43-54.) *See* 20 C.F.R. §§ 416.989, 416.994(b). In May 2003, the SSA initiated another continuing disability review and determined that Plaintiff's disability had ceased. (Tr. 55-84.) Plaintiff disagreed with this determination, and a hearing was ultimately held before an Administrative Law Judge (ALJ) on March 9, 2006. (Tr. 312-31.)

The ALJ found that, although Plaintiff had a history of treatment for schizophrenia and continued to suffer from a severe mental impairment, his condition no longer met or equaled the requirements of any listed impairment. The ALJ then determined that Plaintiff had experienced substantial medical improvement as of January 2004 that was related to his ability to work, and that he possessed the residual functional capacity to perform unskilled work, with certain restrictions due to some limitations in mental functioning.[2] Stating that he was using the method for evaluating mental impairments prescribed by § 416.920a, the ALJ found that Plaintiff's mental impairment mildly restricted his daily activities and moderately limited his social functioning and ability to maintain concentration, persistence and pace, and carry out detailed instructions, and that he had never

---

[2]The ALJ found that Plaintiff could perform work that was simple, routine, repetitious, and supervised in a low stress environment, with only occasional interaction with the public, co-workers, and supervisors. (Tr. 12-13.)

experienced an episode of decompensation in a work setting. After consulting with a vocational expert, the ALJ found that Plaintiff had no past relevant work but, based on his vocational profile and limitations, could perform other work existing in significant numbers in the regional and national economy. The ALJ thus concluded that Plaintiff was no longer disabled. (Tr. 10-15.) Following a series of administrative appeals, the ALJ's decision has become the final decision of the Commissioner.

Here, Plaintiff argues (docket entry #10) that: (1) substantial evidence does not support a finding that medical improvement has occurred; (2) substantial evidence does not support the ALJ's questioning of the vocational expert and his finding that there are jobs that Plaintiff can perform; and (3) the ALJ did not properly assess credibility.

### III.

The regulations define medical improvement as a decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable medical decision regarding disability. 20 C.F.R. § 416.994(b)(1)(i). A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with the claimant's impairments. *Id.* Whether a claimant's medical condition has improved is primarily a question for the trier of fact, often determined by assessing the credibility of witnesses. *Muncy*, 247 F.3d at 734.

In support of his determination that Plaintiff's mental impairment had improved as of January 2004, the ALJ primarily relied on the report of Dr. Nancy J. Toombs, a licensed psychologist who interviewed and evaluated Plaintiff on August 14, 2003. (Tr. 11.) In her

report (Tr. 237-43), Dr. Toombs concluded that Plaintiff was "very coherent" and not psychotic or delusional at the time of the interview, and her diagnostic impression was alcohol abuse versus dependency, malingering, and antisocial personality disorder. She reported that Plaintiff had a very difficult time describing any auditory and visual hallucinations, and became agitated when she asked for details. She said she questioned him about his participation in mental health and substance abuse treatment programs while incarcerated at the ADC and that, when he realized she was familiar with these services, he began to give "bizarre responses" in what she believed was a deliberate attempt to appear mentally ill. She said she believed he was not psychotic in the ADC or he would have been maintained on psychotropic medication and housed in the mental health barracks. She said he initially presented as fearful and confused but, as the interview progressed, he became vague, hostile, angry and uncooperative. She said that once he realized that she was aware he was not schizophrenic or psychotic, he would not supply spontaneous information, avoided all direct questions, and gave intentionally wrong answers to simple questions. She felt he had no limitations in adaptive functioning and was "clearly malingering." She said that his problems were due to his antisocial personality and "most probably" drug and alcohol usage, that he was capable of following instructions, and that his ability to get along with others would be secondary to his willingness to do so.

The Court finds that the ALJ assigned undue weight to Dr. Toombs' report and that it does not constitute substantial evidence to support his conclusion that medical improvement had occurred to the extent that Plaintiff is now able to engage in substantial gainful activity.

Generally, the opinion of a consulting physician who examines a claimant once does not constitute substantial evidence. *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The ALJ is required to evaluate every medical opinion received and usually should afford greater weight to opinions from treating sources since these are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(d). This is particularly true in the case of chronic mental impairments. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00(D)(2) (citing the need for "longitudinal evidence" from "relevant sources over a sufficiently long period of time prior to the date of adjudication" to establish severity of mental impairment) & (E) ("The results of a single examination may not adequately describe your sustained ability to function.").

Given the unpredictable course of mental illness, "symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse." *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001). Moreover, individuals with chronic mental disorders "commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms." *Id.* Therefore, in evaluating mental impairments, the Commissioner must "take into account any variations in the level of [a claimant's] functioning" over the relevant time period, as well as any evidence "indicating that the claimant's true functional ability may be substantially less than the claimant asserts or wishes" and that he "may be much more impaired for work than [his] signs and symptoms would indicate." *Id.*; §§ 12.00(D)(2) & (E); *see also* 20 C.F.R. §

6

416.920a(c)(1) (in evaluating mental impairments, ALJ must consider "all relevant evidence to obtain a longitudinal picture of [a claimant's] overall degree of functional limitation").

According to the record, six different treating or consulting psychiatrists or psychologists have diagnosed Plaintiff with some type of schizophrenia[3] over the last thirteen years: (1) Dr. Luther White, a psychiatrist who examined him in March 1993, upon referral by Plaintiff's local physician and family because of hallucinations and delusions, and who treated him through June 1994 (Tr. 193, 198-201); (2) Richard Maddock, Ph.D., a psychologist who evaluated Plaintiff in August 1994 and again in September 1999 (Tr. 222, 225-32); (3) Pamela Buck, Ph.D., a psychologist who examined Plaintiff in November 1999 at the request of the SSA, noting that he was "open and honest" in providing information (Tr. 233-36); (4) Kenneth Gladieux, M.D., a staff psychiatrist with Counseling Services of Eastern Arkansas (CSEA), who evaluated and treated him on at least two occasions in August 2004 (Tr. 270, 272-73); (5) David Erby, M.D., a CSEA psychiatrist who evaluated Plaintiff in July 2005 (Tr. 261-62); and (6) Nita Brown, M.D., a CSEA staff psychiatrist who evaluated him in January 2006 (Tr. 251).

Dr. Toombs, a one-time consultant, is the only mental health professional who has concluded that Plaintiff is not schizophrenic, with contrary diagnoses by three treating psychiatrists occurring after her August 2003 evaluation. The record shows that, between August 2, 2004, and January 11, 2006, Plaintiff was seen for counseling or treatment at CSEA approximately thirteen times by various mental health professionals, including the three staff psychiatrists identified above (Drs. Gladieux, Erby and Brown), a licensed

---

[3]The assessments varied between chronic or subchronic paranoid schizophrenia (Tr. 199, 230, 236) and undifferentiated schizophrenia (Tr. 251, 262, 270, 273).

psychological examiner, a registered nurse/mental health professional, and a licensed clinical social worker.  (Tr. 249-78.)  During this time, Plaintiff continually reported and exhibited symptoms characteristic of schizophrenia, and he was treated with counseling and medication.  The CSEA records contain no suggestion of malingering or deception on the part of Plaintiff by any of the clinicians with whom he came in contact on a fairly regular basis.

An ALJ is required to "always give good reasons ... for the weight [he gives a] treating source's opinion."  20 C.F.R. § 416.927(d)(2).  The ALJ's only mention of the CSEA treating sources, whose records over a seventeen-month period comprise thirty pages,[4] is a social worker's observation in January 2006 that Plaintiff was "doing fairly well with symptom control" and Dr. Brown's report the same month that his medication helped him sleep and decreased the voices he heard, that he had no interpersonal conflicts with his girlfriend, and that his medication needed to be increased.  (Tr. 11-12, 251-52.)

The fact that a chronic schizophrenic is "doing well" has no necessary relation to his ability to work on a sustained basis or his work-related functional capacity.  *Hutsell*, 259 F.3d at 712-13.  Furthermore, while the record supports a finding that Plaintiff's auditory hallucinations were diminished by his medication, the medical evidence also shows that they persisted as a recurring symptom from 1993 to 2006 but that, through the years, Plaintiff had developed "strategies to deal with them."  (Tr. 258.)  As stated, fluctuating severity and symptoms are characteristic of mental illness, and periods of remission do not mean that the disability has ceased.  *Hutsell*, 249 F.3d at 713-14; *Andler v. Chater*, 100

---

[4]The CSEA records appear twice in the record.  (Tr. 249-78, 282-311.)

F.3d 1389, 1393 (8th Cir. 1996).  The regulations make it clear that, while structured settings, medication and treatment may ameliorate the overt symptoms of an individual with a chronic mental disorder, this does not mean that the individual is able to function on a regular and continuing basis in a work environment.  §§ 12.00(F), (G), (H).  Moreover, the regulations recognize that, for purposes of determining whether a disability has ceased as part of the continuing disability review process, there may be medical improvement in the severity of an impairment but no related increase in a claimant's functional capacity to do work activities.  20 C.F.R. § 416.994(b)(1)(ii).

The highest GAF (Global Assessment of Functioning) score assessed to Plaintiff at CSEA from August 2004 to January 2006 was 58 in July 2005 (Tr. 261), with most of his scores in the 42-48 range.  (Tr. 251 [42 GAF]; 252, 253, 255, 258, 268 [all 48 GAF]; 270 [51 GAF]; 271 [43 GAF]; 273 [46 GAF]; 277 [38 GAF].)  A GAF score is a subjective determination which represents the clinician's judgment of the individual's overall level of functioning on a 1-100 scale.  *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed., Text Revision 2000).  A person with a GAF between 41 and 50 exhibits "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id.* at 34.  The assessments given to Plaintiff, along with other progress notes and evaluations in the record, indicate a significantly impaired level of functioning.

The Court finds that the ALJ erred in relying on Dr. Toombs' one-time opinion and failed to adequately explain why he was discrediting the observations and opinions of Plaintiff's treating sources at CSEA.  Further, the Court believes that the CSEA mental health professionals would be in a better position than Dr. Toombs to provide a detailed,

longitudinal assessment of Plaintiff's mental condition and ability to perform work-related functions.  As Plaintiff's treatment at CSEA occurred after Dr. Toombs' evaluation, she did not have the benefit of those medical records.  However, her report does not state that she obtained or reviewed any of Plaintiff's prior records of psychiatric treatment or evaluations from 1994 through 1999 and, instead, indicates that she based her opinion solely on the limited information she was able to obtain from her interview with him.  Certainly, his evasiveness and uncooperativeness hampered her efforts to obtain a true picture of his condition, but his behavior may have been due in part to mistrust of the examiner or interview setting as a manifestation of his mental disorder, rather than a deliberate manipulation of the system.  He exhibited similar behavior in other interviews.  (*E.g.*, Tr. 201, 219-21, 225-30, 235A, 251, 272-73.)  Dr. Toombs' report does not indicate that she administered any diagnostic tests to verify her belief that Plaintiff was malingering.  *See Johnson v. Barnhart*, 390 F.3d 1067, 1071 (8th Cir. 2004) (ALJ appropriately considered malingering conclusion where strongly indicated or verified by several tests).

This matter will, therefore, be remanded so that the ALJ can contact the CSEA mental health professionals, or another treating source if one exists, to obtain a thorough evaluation of Plaintiff's mental impairment and its related functional restrictions, including an opinion regarding malingering.  After obtaining the additional evaluation, the ALJ should fully discuss all of the relevant evidence and explain the basis for the weight assigned to the various medical opinions in determining whether there has been medical improvement in Plaintiff's mental impairment to the point that he is now able to engage in work activity.

Plaintiff also argues that the ALJ erred by failing to compare Plaintiff's current condition to evidence from the early 1990s when he was originally awarded benefits.  For

purposes of determining whether medical improvement has occurred, the point of comparison is the severity present at the time of the most recent favorable disability decision which, in Plaintiff's case, was in 1999. 20 C.F.R. § 416.994(b)(1)(vii). Therefore, on remand, the ALJ should specifically address the evaluations and other evidence from 1999 (those of Dr. Maddock and Dr. Buck).

The Court agrees that factors exist in the record which weigh against a finding of a disabling mental impairment: Plaintiff's apparent failure to seek psychiatric treatment or counseling from 1999 to 2004, his intermittent noncompliance with the medication regime, and his failure to keep appointments with CSEA psychiatrists. *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including the failure to seek medical treatment for a condition or keep appointments); *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (condition that can be controlled by treatment or medication cannot be considered disabling); *but see Burnside v. Apfel*, 223 F.3d 840, 843-44 (8th Cir. 2000) (ALJ must inquire into the circumstances surrounding a failure to follow a prescribed course of treatment, and must determine whether claimant had a good reason for failing to comply and whether compliance would restore the claimant's ability to work or sufficiently improve his condition). Additionally, Plaintiff's credibility is undermined by discrepancies in the reports given by him and his family-members to the various medical providers and examiners, the hearing testimony, and other evidence in the record. For example, he told Dr. Toombs he had no children, but other times reported that he had between three and six. (Tr. 200, 219, 239, 323.) He also repeatedly denied excessive drinking, (Tr. 219, 234, 258, 272, 318, 325-26), but was convicted of DWI in January 2000 and February 2003 (Tr.

126).  It is certainly appropriate for the ALJ to consider these factors upon remand, so long as they are adequately explored and discussed.

IV.

Plaintiff's next argument is that, because the ALJ did not adequately address or analyze all of the evidence in the record, the hypothetical question posed to the vocational expert did not encompass all of Plaintiff's impairments and, therefore, the expert's response cannot constitute substantial evidence to support the ALJ's finding that there are jobs Plaintiff can perform.  Plaintiff also contends that the ALJ's residual functional capacity (RFC) assessment is inadequate because there is no evidence from a treating or examining source regarding Plaintiff's work-related abilities.  These specific arguments need not be addressed because the ALJ will need to make new determinations in these areas in light of the additional evidence he obtains.  Furthermore, the ALJ has been directed to procure specific evidence from Plaintiff's treating mental health providers regarding his work-related functional abilities, which will necessitate reevaluation of his RFC.  *See Smith v. Barnhart*, 435 F.3d 926, 930-31 (8th Cir. 2006) (remanding for ALJ to develop the record in order to ascertain what level of work, if any, claimant was able to perform in light of seizure disorder, to consider the extent of this impairment in evaluating her RFC, and to frame a revised hypothetical question to the vocational expert if warranted).

V.

Plaintiff's last argument is that the ALJ erred in assessing the credibility of his testimony and that of his girlfriend. The ALJ is in the best position to gauge credibility and is granted deference in that regard as long as his credibility determinations are supported by good reasons and substantial evidence. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). An ALJ's decision must contain "specific reasons" for his credibility findings and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996). The Social Security regulations and rulings identify a number of factors for the ALJ to consider in assessing credibility, most of which were set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *See* 20 C.F.R. § 416.929(c)[5]; SSR 96-7p, at *3, *5. An ALJ's analysis is sufficient if he acknowledges and considers the identified factors, and he need not explicitly discuss each one. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

Although the ALJ reiterates some of Plaintiff's testimony (Tr. 10-11), the only discussion of his credibility is one sentence: "The claimant's subjective allegations are not borne out by the overall record and are found not to be fully credible." (Tr. 14.) The decision does not cite *Polaski*, § 416.929(c) or SSR 96-7p, nor does it list the applicable

---

[5]As stated in this regulation, the ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations.

factors. As discussed earlier, certain discrepancies can be gleaned by comparing his testimony to other parts of the record, but, on remand, the ALJ should fully explain his reasons for discounting Plaintiff's credibility in compliance with the applicable law.

As to the supporting testimony of Plaintiff's long-time girlfriend, the ALJ summarized her testimony but discounted it in view of the rest of the record and as based on "uncritical acceptance of the claimant's complaints and, to some degree, [as] motivated by the desire to see him obtain benefits." (Tr. 13.) These are permissible reasons for discounting the witness's testimony. *See Choate*, 457 F.3d at 872.

VI.

IT IS THEREFORE ORDERED that the Commissioner's decision is **reversed** and this matter is **remanded** to the Commissioner for further proceedings consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 27th day of September, 2007.

_____
UNITED STATES MAGISTRATE JUDGE